UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STUDENT LOAN SERVICING ALLIANCE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 18-0640 (PLF) |
| DISTRICT OF COLUMBIA, et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on defendants' motion [Dkt. No. 14] to dismiss plaintiff's complaint. Plaintiff has filed a memorandum [Dkt. No. 16] in opposition to the motion to dismiss, and defendants have filed a reply [Dkt. No. 17] in support of their motion. Having reviewed the complaint, the parties' briefs, and the entire record in this case, the Court will deny defendants' motion without prejudice.

I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Student Loan Servicing Alliance ("SLSA") is a trade organization whose membership is comprised of student loan servicers and affiliates. See Compl. at ¶ 9. In this case, SLSA challenges the lawfulness of District of Columbia Law 21-214, as well as the emergency rules promulgated under that statute, which aim to regulate the student loan servicing industry. See id. at ¶¶ 6-8. SLSA asserts associational standing by virtue of the alleged harms caused to its members by D.C. Law 21-214 and its implementing regulations. See id. at

¶¶ 13-16. SLSA brought its lawsuit against three defendants: Stephen C. Taylor, in his official capacity as Commissioner of the D.C. Department of Insurance, Securities and Banking; Charles A. Burt, in his official capacity as Student Loan and Foreclosure Ombudsman; and the District of Columbia itself. See id. at ¶¶ 10-12; see also Opp'n at 33-34.

Signed into law on December 7, 2016, D.C. Law 21-214 went into effect on February 18, 2017. See Compl. Ex. B. Formally titled the "Student Loan Ombudsman Establishment and Servicing Regulation Amendment Act of 2016," D.C. Law 21-214 provides for the development of a licensing and regulatory regime to govern student loan servicers operating in the District of Columbia. In furtherance of this statutory goal, the law also creates a Student Loan Ombudsman position within the Department of Insurance, Securities and Banking ("DISB"). Under D.C. Law 21-214, the DISB Ombudsman is tasked with enforcing the licensing provisions of the law, conducting examinations of student loan servicers and collecting examination fees, and receiving and responding to complaints submitted by borrowers, among other things.

On September 8, 2017, the DISB Commissioner adopted a Notice of Emergency and Proposed Rulemaking ("First Notice") under the regulatory authority conferred by D.C. Law 21-214 and delegated to him by the Mayor. See Compl. Ex. C at 2; Compl. Ex. O. This First Notice not only began the rulemaking process, but also implemented emergency interim regulations which immediately went into effect. See Compl. Ex. C at 2. By its own terms, the First Notice explained that the "emergency rulemaking [was] necessary because the District must continue to act swiftly to ensure the long-term financial safety and security of District residents with student educational loans" and provide continuity in the face of regulatory uncertainty at the

federal level.  See id. at 1.  In response to the First Notice, DISB received four comments, including a comment submitted by SLSA.  See Compl. Ex. H at 2; Compl. at ¶ 94.

On December 26, 2017, and prior to the expiration of the First Notice, DISB promulgated a Notice of Second Emergency and Proposed Rulemaking ("Second Notice").  See Compl. Ex. H at 2.  The Second Notice similarly initiated a comment period, while becoming immediately effective in the interim.  See id.  The Second Notice largely mirrored the First Notice, with one notable exception:  DISB changed the formula for calculating the annual assessment fee from "$800 + $6.60 per loan" to "$0.50 per borrower residing in the District of Columbia serviced by a servicer."  See Opp'n Ex. 1 at 16; see also Compl. Ex. C at 15; Compl. Ex. H at 16.  The Second Notice received one comment – submitted by SLSA – before the comment period closed on February 26, 2018.  See Mot. Ex. B at 2; Opp'n at 3.

SLSA filed its complaint in this case on March 20, 2018, challenging D.C. Law 21-214 and the then-operative Second Notice.  Specifically, the complaint alleges that the D.C. law and regulations are preempted by federal law on the basis of three recognized theories: express preemption, field preemption, and conflict preemption.  See Compl. at ¶¶ 123-93.  The complaint also alleges that the regulations conflict with the plain language of D.C. Law 21-214, in violation of the District of Columbia Administrative Procedure Act.  See id. at ¶¶ 194-208.[1]

On April 20, 2018, DISB promulgated a Third Notice of Emergency and Proposed Rulemaking ("Third Notice").  See Mot. Ex. B at 2.  Upon its promulgation, the Third Notice superseded the Second Notice, going into immediate effect while also commencing an additional comment period.  See id.  This Third Notice is currently operative, although it expires

---

[1] The Court agrees with defendants that the legal grounds on which SLSA brought this claim for relief are unclear from the face of the complaint. See Mot. at 30; see also Compl. at ¶¶ 194-208.  SLSA has clarified in its briefing, however, that the organization seeks relief under the District of Columbia Administrative Procedure Act.  See Opp'n at 32.

on August 18, 2018. See id. The provisions of the Third Notice are substantially similar to those of the Second Notice, although the Third Notice makes a handful of changes. Notably, the Third Notice includes a savings clause that makes record keeping requirements applicable only to the extent allowed by federal law, as well as new language conferring discretion on the Commissioner to "waive or reduce [record keeping] requirements . . . if . . . compliance would require the licensee to violate federal law." See Opp'n Ex. 2 at 13. The Third Notice also contains provisions expanding the discretion of the Commissioner with regard to examinations and investigations of student loan servicers. See id. at 15. In addition, in promulgating the Third Notice, DISB extended the deadline for the annual assessment of fees for a licensee from November 1 to November 15, 2018, see id. at 12, and reduced the maximum late penalty for filing an annual report from $1,000 per day to $50 per day, see id. at 10, 17.

## II. ANALYSIS OF THE INSTANT MOTION

Defendants filed their motion to dismiss the complaint shortly after DISB promulgated its Third Notice implementing a new set of regulations. In their motion, defendants argue that SLSA's claims are moot because the complaint challenges the Second Notice, now superseded by the Third Notice, and the Second Notice is no longer in effect. See Mot. at 9-10. Defendants also move to dismiss the complaint on grounds of justiciability (arguing that SLSA's preemption claims are not ripe and that SLSA lacks standing) and for failure to state a claim upon which relief can be granted (arguing the legal merits of SLSA's preemption claims, as well as the merits of SLSA's D.C. Administrative Procedure Act claim). See id. at 10-32. With a few exceptions, defendants' memorandum in support of its motion largely addresses the merits as they pertain to the Third Notice.

Instead of seeking leave to amend its complaint, which was based entirely on the Second Notice, SLSA responded to defendants' motion by filing a memorandum in opposition, asserting that "[t]he Third Emergency Rules differ in only minor respects from the superseded Second Emergency Rules" and proceeding to argue the merits of the motion to dismiss with respect to the Third Notice. See Opp'n at 8. In its opposition, SLSA also argues that deeming the complaint moot would promote gamesmanship:

> [N]othing prevents Defendants from promulgating further emergency rules or even adopting the language from the First Emergency Rules or Second Emergency Rules in further iterations of emergency rules ad infinitum or as a final rule. If Defendants could moot the claims in this case challenging the Emergency Rules each time they adopt new ones, Defendants could effectively prevent adjudication of emergency rules – enforceable by their own terms – every time they were challenged.

See id.

The Court agrees with defendants that SLSA's complaint is now moot. The complaint challenges the Second Notice, now superseded by the Third Notice, and in doing so alleges facts no longer pertinent to the arguments raised by the parties in their briefings or relevant to the ultimate resolution of this case. In resolving a motion to dismiss under Rules 12(b)(1) or 12(b)(6), the complaint is the crux of the Court's inquiry. In order to survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter on its face that, if accepted as true, states a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). And in ruling on a Rule 12(b)(1) motion, a court looks first to the allegations in the complaint, construing them in the light most favorable to the plaintiff. See Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). Although a court may also consider materials beyond the pleadings to assist it in determining whether the Court has jurisdiction, see id., here the

complaint on its face challenges a superseded regulation and, in doing so, alleges facts that are no longer relevant. Particularly in light of SLSA's conflict preemption arguments – which depend on a careful comparative analysis of specific individual statutory and regulatory provisions – the Court declines to import the arguments raised in SLSA's opposition into a complaint that, on its face, challenges regulations no longer in effect.

The Court acknowledges SLSA's concerns that defendants could attempt to avoid judicial review through promulgation of emergency rules ad infinitum. But it is not at all clear that this is what the District of Columbia has done here or possibly may do going forward in this case. It is simply too early to tell whether the Court may need to employ measures to counteract such gamesmanship in the future. Although the promulgation of new regulations might sometimes be a kind of gamesmanship intended to avoid judicial review, such events at other times may be the result of the functioning democratic process. After all, subsequent iterations of the regulations at issue in this case appear to have been increasingly responsive, at least in part, to SLSA's concerns giving rise to this litigation. As a result, the Court now declines to interpret the provisions of the Third Notice into SLSA's complaint in a strained and premature effort to reach the merits. For now, denying defendants' motion without prejudice and permitting SLSA to amend its complaint provides a more appropriate avenue to ultimately resolve the merits of this case.

As further grounds for declining to reach the merits of the motion to dismiss, the Court notes that, in its opposition, SLSA appears to have confused the standards applicable to this Court's review of factual matters and legal matters. It is true that, in determining whether to grant a motion to dismiss, the Court must construe the complaint in the plaintiff's favor and treat all well-pleaded factual allegations as true. See Attias v. Carefirst, Inc., 865 F.3d 620, 627 (D.C.

6

Cir. 2017); see also Bell Atl. Corp. v. Twombly, 550 U.S. at 572; Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). But this liberal pleading standard applies only to factual matters – a plaintiff's legal conclusions do not benefit from this favorable standard. Cf. Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. at 680 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555). Evidencing its confusion, SLSA argues in its opposition that it need only show the plausible or possible merits of its legal arguments at the motion to dismiss stage. See, e.g., Opp'n at 21-22, 26-27. But no authority supports such a position. And as a result of its mistaken view of the standard, SLSA has failed to make appropriate legal arguments in support of its complaint, hindering this Court's ability to resolve the legal issues on their merits – a task it must undertake in ruling on the motion to dismiss, even as the Court accepts SLSA's factual allegations as true and construes them in the most favorable light.

## III. CONCLUSION

For these reasons, the Court does not believe it is now appropriate to resolve the merits of defendants' motion to dismiss in the current posture of the case. Accordingly, it is hereby

ORDERED that defendants' motion [Dkt. No. 14] to dismiss plaintiff's complaint is DENIED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that the motion hearing at 2:00 P.M. on June 28, 2018, is converted to a status conference. At the status conference, the Court will discuss with the parties their proposed schedules for proceeding in this case, including proposed deadlines for the filing of a motion for leave to amend the complaint and a renewed motion to dismiss that complaint. Furthermore, after reviewing the complaint and the parties' filings, the Court remains skeptical

that any discovery is appropriate in this case – the parties do not appear to dispute any relevant factual matters, and as a result, only questions of law remain to be resolved by the Court. Accordingly, the parties also should be prepared to discuss whether any future motion to dismiss should be combined with a motion for summary judgment.

        SO ORDERED.

                                              _____/s/_____
                                              PAUL L. FRIEDMAN
                                              United States District Judge

DATE:  June 25, 2018