UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STUDENT LOAN SERVICING ALLIANCE,<br><br>    *Plaintiff*,<br><br>v.<br><br>STEPHEN C. TAYLOR, *et al.*,<br><br>    *Defendants*. | Civil Action No. 18-640 (PLF) |

### DEFENDANTS'[1] SUPPLEMENTAL FILING IN RESPONSE TO THE COURT'S OCTOBER 10, 2018 MINUTE ORDER

### INTRODUCTION

In its October 10, 2018 Minute Order, the Court invited the Parties to "address[] directly whether D.C. Law 21-214 and the final rules promulgated pursuant to it violate the intergovernmental immunity doctrine," an argument advanced by the United States in its August 24, 2018 Statement of Interest (SOI). *See* ECF No. 20 at 14-18. As explained below, D.C. Law 21-214 and the District's implementing regulations do not violate the intergovernmental immunity doctrine. And, in any event, this Court should decline to address an argument not presented by the Parties to this litigation, but instead solely raised by a non-party in a

---

[1]     Defendants are the District of Columbia, Stephen C. Taylor, in his official capacity as DISB Commissioner, and Charles A. Burt, in his official capacity as DISB Student Loan and Foreclosure Ombudsman. Defendants are collectively referred to as "the District."

statement of interest.

## ARGUMENT

I. **The District Does Not Directly Regulate or Discriminate Against the Federal Government.**

The United States advances two alternative arguments for why the District violates the intergovernmental immunity doctrine: (1) it directly regulates the federal government; and (2) it discriminates against the federal government. ECF No. 20 at 14. Each is unavailing and contrary to the limited scope of the intergovernmental immunity doctrine.

As explained by the Supreme Court in *North Dakota v. United States*, 495 U.S. 423 (1990), although "[s]tate tax laws, licensing provisions, contract laws, or even 'a statute or ordinance regulating the mode of turning at the corner of streets,' … regulate federal activity in the sense that they make it more costly for the Government to do its business," "[a] state regulation is invalid only if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *Id.* at 434-35 (citations omitted). The Court therefore "decisively rejected the argument that any state regulation which indirectly regulates the Federal Government's activity is unconstitutional." *Id.* at 434.

As to direct regulation, the United States argues that the District's laws and regulations improperly "dictate how the servicers perform their contracts with [the U.S. Department of Education]" by imposing record keeping and reporting requirements. ECF No. 20 at 15. That argument, however, is foreclosed by *North Dakota. See* 495 U.S. at 437 (no direct regulation where "[b]oth the reporting

requirement and the labeling regulation operate against suppliers, not the Government, and concerns about direct interference … therefore are not implicated."). The District's regulations apply only to student loan servicers, not the federal government. Nor do the District's regulations attempt to directly dispose of federal property. *But see, e.g., City of Des Moines v. Sec'y of Hous. and Urban Dev.*, Civil Action No. 00-90625, 2000 WL 33666936, at *4 (D. Iowa Sept. 22, 2000).

And the United States' reliance on *Boeing, Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014), is misplaced. In *Boeing*, a California law imposed higher cleanup standards for radioactive waste than what was required by the Department of Energy under the Atomic Energy Act. 768 F.3d at 839 ("[t]he state law requires an application of more stringent cleanup standards than federal laws and [the Department of Energy's] cleanup procedures do."). The Ninth Circuit found California's law improper because it "replaces the federal cleanup standards" and "overrides federal decisions as to necessary decontamination measures" such that it "regulates not only the federal contractor but the effective terms of [the] federal contract itself." *Id.* at 840. Here, the District's regulations do not mandate the terms of federal contracts with student loan servicers; recordkeeping and reporting requirements have no effect on, and function independently of, servicers' performance of their federal contractual obligations.

In addition, the United States alleges that the District's regulations are discriminatory because the regulations address only *student* loan servicing, "rather

than loan servicing or consumer lending in general." *Id.* at 15-16.[2] The Supreme Court has explained that to be non-discriminatory, "the regulation be one that is imposed on some basis unrelated to the object's status as a Government contractor or supplier, that is, that it be imposed equally on other similarly situated constituents of the State." *North Dakota*, 495 U.S. at 438. Here, all student loan servicers, whether federal contractors or otherwise, are subject to the same regulatory standards. *See also Boeing*, 768 F.3d at 842 (discrimination when California imposed a more stringent standard on cleanup of federal land than on other land); *United States v. California*, 314 F. Supp. 3d 1077, 1093 (E.D. Cal. 2018). And the argument that D.C. Law 21-214 is discriminatory because it is under-inclusive (applying only to *student* loan servicers) finds no basis in the intergovernmental immunity doctrine. *See, e.g., U.S. Postal Serv. City of Berkeley*, Civil Action No. 16-4815, 2018 WL 2188853, at *3 (N.D. Cal. May 14, 2018) (city zoning ordinance was not discriminatory even though it related only to historic designation because "[i]t is nothing more than a truism that any regulation purporting to govern a specific area will affect properties right up to the boundaries

---

[2] The United States makes this claim despite later acknowledging that the District's regulations also "apply to purely private loan servicing." ECF No. 20 at 16. It also reads out-of-context a statement in the District's Third Notice of Emergency and Proposed Rulemaking, ECF No. 19-12, that explains some of the purposes of the rulemaking. Those purposes, however, apply equally to commercial and private loans. *See id.* at 2 (referring to federal "amend[ment] and repeal [of] several federal regulations and policies related to student aid" and need for the District to "strengthen consumer protections for student loan borrowers").

of that area but not the properties immediately beyond.").[3]

## II. Because Intergovernmental Immunity Was Not Raised by a Party to This Lawsuit, This Court Should Decline to Rely on It.

In addition, intergovernmental immunity was only raised by the United States in its SOI, and not by plaintiff. As such, the Court should decline to address it in ruling on the Parties' motions for summary judgment. *Eldred v. Ashcroft*, 255 F.3d 849, 850-51 (D.C. Cir. 2001) (finding it "particularly inappropriate" to consider argument raised by amicus but not adopted by parties in the case); *see Cellnet Commc'ns v. FCC,* 149 F.3d 429, 443 (6th Cir. 1998) ("[t]o the extent that the amicus raises issues or make arguments that exceed those properly raised by the parties, [the court] may not consider such issues"); *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1247 (11th Cir. 1991) (court will not consider issues raised in an amicus brief "that were neither raised in the district court nor argued by appellants on appeal."); *Tafas v. Dudas*, 511 F. Supp. 2d 652. 660 (E.D. Va. 2007) (a court "may not consider legal issues or arguments not raised by the parties.").[4]

Although the United States filed its SOI under 28 U.S.C. § 517 rather than

---

[3] Intergovernmental immunity doctrine is limited, and many of the United States' claims sound more accurately in preemption. As the Supreme Court explained, "[c]laims to any further degree of immunity must be resolved under the principles of congressional pre-emption." *North Dakota*, 495 U.S. at 435 and n.7 (1990) (citing cases applying conflict preemption principles).

[4] Moreover, it is unclear if plaintiff would have standing to raise intergovernmental immunity at all. *See Boeing*, 786 F.3d at 842 ("When the state law is *discriminatory*, a private entity with which the federal government deals can assert immunity.") (emphasis added); *City of Joliet v. Mid-City Nat'l Bank of Chicago*, Civil Action No. 05-6746, 2008 WL 4344896, at *4 (N.D. Ill. Mar. 27, 2008) ("intergovernmental immunity has never been extended to private parties").

5

filing an amicus brief under Local Civil Rule 7(o), the same principles should apply, given the United States' minimal participation here. The United States should not be afforded the opportunity to advance independent arguments when it is not engaged as a party in this litigation.

## CONCLUSION

For the foregoing reasons, the Court should decline to consider the intergovernmental immunity argument raised by the United States in its August 24, 2018 Statement of Interest.

Dated:  October 18, 2018.                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Gregory M. Cumming*
GREGORY M. CUMMING [1018173]
JESSICA N. KRUPKE [1019967]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C.  20001
(202) 724-6627
(202) 715-7769 (fax)
gregory.cumming@dc.gov

*Counsel for Defendants*